IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: EDWARD RUDOLPH and      MELANIE RUDOLPH      Debtors, | BANKRUPTCY CASE NUMBER 22-12544 - MDC |
| NATIONSTAR MORTGAGE LLC      Movant. v. | CHAPTER 13 11 U.S.C. § 362 |
| EDWARD RUDOLPH and MELANIE RUDOLPH      Debtors/Respondents, | HEARING DATE AND TIME: February 28, 2023 at 10:30 AM |
| KENNETH E. WEST, Office of the Chapter 13 Standing Trustee      Additional Respondent. | COURTROOM NO. 2 |

## MOTION OF NATIONSTAR MORTGAGE LLC FOR RELIEF FROM THE AUTOMATIC STAY UNDER SECTION §362 (d)

Secured Creditor, Nationstar Mortgage LLC ("Movant"), by and through its undersigned counsel, pursuant to 11 U.S.C. §362, hereby seeks relief from the automatic stay to exercise and enforce its rights, without limitation, with respect to certain real property.  In support of this motion, Movant avers as follows:

1.      Debtor named above filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code in the Eastern District of Pennsylvania under the above case number.

2.      Movant is the holder of a secured claim against Debtors, secured only by a first mortgage lien on real estate which is the principal residence of Debtors located at 45 Martin Lane, Norwood, PA 19074 (the "Mortgaged Premises").

3.      Nationstar Mortgage LLC services the loan on the property referenced in this motion for relief.  In the event the automatic stay in this case is modified, this case dismisses and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Nationstar Mortgage LLC.

4.      Nationstar Mortgage LLC, directly or through an agent, has possession of the promissory note.  The promissory note is either made payable to Noteholder or has been duly indorsed in blank.  Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

5.      The filing of the aforesaid Petition operated as an automatic stay under Section 362(a) of the Bankruptcy Code of proceedings by Movant to foreclose on the Mortgaged Premises.   Movant requests relief from the automatic stay to continue with the filed mortgage foreclosure action, if any, and to take the necessary action to obtain the Mortgaged Premises.

6.      Additional Respondent is the Standing Trustee appointed in this Chapter 13 proceeding.

7.      Debtors have claimed an exemption in the amount of $55,800.00 in the subject property.

8.      Debtors have failed to make all post-petition monthly mortgage payments.

9.      The defaults include the failure to make the following monthly payments:

| | |
|---|---|
| Payments of $1,265.18 from December 1, 2022 through January 1, 2023 | $2,530.36 |
| Suspense Balance | ($469.64) |
| The total amount due | $2,060.72 |

10.     The Fair Market Value of the Mortgaged Premises is $189,360.00, per Debtors' Schedules. Movant retains the right to secure an independent valuation. The approximate amount necessary to payoff the loan is $78,125.54 good through January 19, 2023.  The breakdown of the payoff is as follows:

| | |
|---|---|
| Principal Balance | $76,169.67 |
| Accrued Interest | $19,674.35 |
| Corporate Advance | $1,750.00 |
| Suspense Balance | ($1,761.48) |

11.     Movant's interests are being immediately and irreparably harmed.  Movant is entitled to relief, from the automatic stay, pursuant to either 11 U.S.C. § 362 (d)(1) or (d)(2), because of the foregoing default and because:

    a)     Movant lacks adequate protection for its interests in the Mortgaged Premises by the tender of monthly payments on the loan;

    b)     Debtors is diminishing the equity in the Mortgaged Premises by failing to tender monthly payments on the loan; and

    c)     The Mortgaged Premises are not necessary to an effective reorganization or plan.

12.     Movant requests that the Court waive Rule 4001(a)(3), permitting Movant to immediately implement and enforce the Court's order.

13.    Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.


WHEREFORE, Movant respectfully moves this Court for an Order (i) granting Movant relief from the automatic stay to foreclose upon and to otherwise exercise and enforce its rights with respect to the Mortgaged Premises, (ii) awarding reasonable attorneys' fees incurred in the preparation and presentation of this motion, and (iii) granting all such other and further relief as the Court deems appropriate and necessary.


Respectfully submitted,


Dated: 1.31.2023_____          BY:/s/ Lorraine Gazzara Doyle
                                      Christopher A. DeNardo 78447
                                      Lorraine Gazzara Doyle  34576
                                      LOGS Legal Group LLP
                                      3600 Horizon Drive, Suite 150
                                      King of Prussia, PA 19406
                                      (610) 278-6800
                                      logsecf@logs.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: EDWARD RUDOLPH and<br>    MELANIE RUDOLPH<br>      Debtors,<br><br>NATIONSTAR MORTGAGE LLC<br>      Movant.<br>v.<br><br>EDWARD RUDOLPH and<br>MELANIE RUDOLPH<br>      Debtors/Respondents,<br><br>KENNETH E. WEST, Office of the Chapter<br>13 Standing Trustee<br>      Additional Respondent. | BANKRUPTCY CASE NUMBER<br>22-12544 - MDC<br><br>CHAPTER 13<br><br>11 U.S.C. § 362<br><br>HEARING DATE AND TIME:<br><br>  February 28, 2023 at 10:30 AM<br><br>COURTROOM NO. 2 |

# O R D E R

AND NOW, this _____ day of _____, 2023, at the Eastern District of Pennsylvania, upon the consideration of the Motion of Movant for Relief from the Automatic Stay (the "Motion"), and the failure of Debtors to file an answer, appear or otherwise respond to the Motion, and for good cause shown, it is

ORDERED AND DECREED that the Automatic Stay of all proceedings, as provided under Section 362 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Code"), 11 U.S.C. § 362, is lifted to allow Movant, or its successors, if any, to proceed with its rights under its loan documents for the property located at 45 Martin Ln, Norwood, PA 19074; and it is

FURTHER ORDERED that Rule 4001(a)(3) is not applicable and Movant, or its successors, if any, may immediately implement this order.

BY THE COURT:

_____
HONORABLE MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: EDWARD RUDOLPH and<br>        MELANIE RUDOLPH<br>        Debtors, | BANKRUPTCY CASE NUMBER<br>22-12544 - MDC |
| | CHAPTER 13 |
| NATIONSTAR MORTGAGE LLC<br>        Movant.<br>v. | 11 U.S.C. § 362 |
| | HEARING DATE AND TIME: |
| EDWARD RUDOLPH and<br>MELANIE RUDOLPH<br>        Debtors/Respondents, | February 28, 2023 at 10:30 AM |
| | COURTROOM NO. 2 |
| KENNETH E. WEST, Office of the Chapter<br>13 Standing Trustee<br>        Additional Respondent. | |

## CERTIFICATE OF SERVICE

I, Lorraine Gazzara Doyle____, an employee of the law firm of LOGS Legal Group LLP hereby certify that I caused to be served true and correct copies of the Motion and Notice of Motion, Response Deadline and Hearing Date by First Class Mail, postage prepaid, at the respective last known address of each person set forth below on this _____31st_____ day          of _____January_____, 2023:

Edward Rudolph
45 Martin Lane
Norwood, PA 19074

Melanie Rudolph
45 Martin Lane
Norwood, PA 19074

Brad J. Sadek
Sadek and Cooper

United States Trustee
Sent via electronic notification ustpregion03.ph.ecf@usdoj.gov

1500 JFK Boulevard, Ste 220
Philadelphia, PA 19102
brad@sadeklaw.com  - VIA ECF

Kenneth E. West
Office of the Chapter 13 Standing Trustee
1234 Market Street - Suite 1813
Philadelphia, PA 19107
ecfemails@ph13trustee.com  - VIA ECF

I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


*/s/ Lorraine Gazzara Doyle*
Christopher A. DeNardo 78447
Lorraine Gazzara Doyle  34576
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
(610) 278-6800
logsecf@logs.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: EDWARD RUDOLPH and<br>MELANIE RUDOLPH<br>          Debtors, | BANKRUPTCY CASE NUMBER<br>22-12544 - MDC |
| NATIONSTAR MORTGAGE LLC<br>          Movant.<br>v. | CHAPTER 13 |
| EDWARD RUDOLPH and<br>MELANIE RUDOLPH<br>          Debtors/Respondents,<br><br>KENNETH E. WEST, Office of the Chapter<br>13 Standing Trustee,<br>          Additional Respondent. | |

## **NOTICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE**

Nationstar Mortgage LLC has filed a Motion for Relief, with the Court for relief from the automatic stay.

1.      **Your rights may be affected.   You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult an attorney.)**

2.      **If you do not want the court to grant the relief sought in the Motion** or if you want the court to consider your views on the Motion, then on or before _____ **you or your attorney must file a response to the Motion.** (*see instructions on next page)*.

3.      **A hearing on the Motion** is scheduled to be held on February 28, 2023**,** at __10:30 am_____ in Courtroom 2, United States Bankruptcy Court, Robert N.C. Nix, Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA  19107.

4.      **If you do not file a response to the Motion**, the court may cancel the hearing and enter an order granting the relief requested in the Motion.

5.      You may contact the Bankruptcy Clerk's office for Philadelphia cases at (215) 408-2800 and for Reading cases at (610) 208-5400 to find out whether the hearing has been cancelled because no one filed a response.

6.      If a copy of the motion is not enclosed, a copy of the Motion will be provided to you if you request a copy from the attorney whose name and address is listed on the next page of this Notice.

**Filing Instructions**

7.      **If you are required to file documents electronically by Local Bankruptcy Rule 5005-1,** you must file your response electronically.

8.      **If you are not required to file electronically,** you must file your response at

United States Bankruptcy Court
Eastern District of Pennsylvania
900 Market Street, Suite 400
Philadelphia, PA  19107

9.      **If you mail your response** to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated in Paragraph 2 on the previous page of this Notice.

10.      On the same day that you file your Response to the Motion, you must mail or deliver a copy of the Response to the Movant's attorney:

Christopher A. DeNardo 78447
Lorraine Gazzara Doyle  34576
LOGS Legal Group LLP
3600 Horizon Drive, Suite 150
King of Prussia, PA 19406
Phone: (610) 278-6800
Fax: (847) 954-4809

Date:  1.31.23

(Page 315 of 444)

MIN #: Case 22-12544-mdc    Doc 29    Filed 01/31/23    Entered 01/31/23 17:13:28    Desc Main
Loan Number :  ▮▮▮▮                         Document      Page 9 of 34                        184

# NOTE

**May 25, 2006**                      NORWOOD                      Pennsylvania
   [Date]                      [City]                      [State]

### 45 MARTIN LANE, NORWOOD, PA 19074

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$110,400.00**       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **PHH Mortgage Corp (fka Cendant Mortgage Corp)**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.750 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **01st**      day of each month beginning on **July 1st, 2006**       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1st, 2036**      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3000 Leadenhall Road Mount Laurel, NJ 08054**
                    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **716.06**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

VMP-5N (0207).01        **Form 3200 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials: _E

## 5., LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00**% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
EDWARD RUDOLPH            -Borrower                                               -Borrower


_____ (Seal)                    _____ (Seal)
                         -Borrower                                               -Borrower


                                                           PAY TO THE ORDER OF

_____ (Seal)                    _____ (Seal)
                         -Borrower                                               -Borrower

                                                           WITHOUT RECOURSE

                                                           _____
                                                           Deanne Roberts, Assistant Vice President
                                                           PHH Mortgage Corporation

_____ (Seal)                    _____ (Seal)
                         -Borrower                                               -Borrower


                                                           *[Sign Original Only]*

## ALLONGE ATTACHMENT TO THE NOTE

CENDANT REF:            
INVESTOR REF:
Pool # :

Allonge to that certain note dated  05/25/2006

In the amount of $            $ 110400

To:            EDWARD RUDOLPH

Premises:            45 Martin Ln

NORWOOD, PA 19074

Pay to the order of :

without recourse

**PHH Mortgage Corporation (fka Cendant Mortgage Corp)**

By :

Name :        Dolores Lauria
Title :        Asst. Vice President

*Record & Return to:*
PA/NJ Abstract, Inc.
209 Kedron Avenue
Folsom, PA 19033 *PA-5545*

RD BK03814-0824
2006050367    06/01/2006 10:39:31 AM:9
RCD FEE $114.00

MG-MORTGAGE

DELAWARE
COUNTY

Prepared By:
**Sharon Johnson, PHH Mortgage**
**Corporation**
**3000 Leadenhall Road Mount**
**Laurel, NJ 08054**
**(800) 210-8852**
Return To:

**PHH Mortgage Corporation**
**9700 Bissonnet Street , Suite**
**#1500, HOUSTON, TX 77036**



Loan #: ▮▮▮▮▮▮▮

Premises: **45   MARTIN   LANE**
**NORWOOD**

Parcel Number:
▮▮▮▮▮▮▮▮▮ ce Above This Line For Recording Data]——————————

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **May 25, 2006** together with all Riders to this document.
**(B) "Borrower"** is **EDWARD RUDOLPH, A MARRIED MAN**

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is **PHH Mortgage Corp (fka Cendant Mortgage Corp)**

Lender is a **Corporation**

**PENNSYLVANIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**              Form 3039   1/01

VMP-6(PA) (0502)

Page 1 of 16              Initials: ER

VMP Mortgage Solutions, Inc. (800)521-7291

Original

organized and existing under the laws of **New Jersey**
Lender's address is **3000 Leadenhall Road Mount Laurel, NJ 08054**

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **May 25, 2006**
The Note states that Borrower owes Lender **One Hundred Ten Thousand Four Hundred
Dollars and Zero Cents**                                                    Dollars
(U.S. $ **110,400.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **June 1st, 2036**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _ER_

VMP-6(PA) (0502)                    Page 2 of 16                    Form 3039  1/01

Original

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **COUNTY**          [Type of Recording Jurisdiction]
of **DELAWARE**                                                                [Name of Recording Jurisdiction]:
**See preliminary title report. Being the same premises conveyed to the mortgagors herein by deed being recorded simultaneously herewith; this being a purchase money mortgage given to secure the purchase price of the above described premises.**

which currently has the address of **45   MARTIN   LANE**

                                                                                        [Street]
**NORWOOD**                                        [City], Pennsylvania **19074**          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials: ER

-6(PA) (0502)                         Page 3 of 16                         Form 3039   1/01

Original

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be


Original

paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Initials: _ER_

VMP®-6(PA) (0502)     Page 5 of 16     Form 3039   1/01

Original

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Original

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Original

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

 -6(PA) (0502)                    Page 8 of 16              Initials: _E R_                Form 3039  1/01

Original

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Original

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

Original

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to



Original

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or

Original

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Original

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials: _ER_

VMP®-6(PA) (0502)           Page 14 of 16           Form 3039    1/01

Original

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                   _____ (Seal)
                                                   EDWARD RUDOLPH            -Borrower

_____                   _____ (Seal)
                                                                            -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                           -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                           -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                           -Borrower

VMP-6(PA) (0502)                    Page 15 of 16                    Form 3039   1/01

Original

**COMMONWEALTH OF PENNSYLVANIA, DELAWARE**                               County ss:

On this, the **25th**                 day of **May, 2006**                 , before me, the
undersigned officer, personally appeared **EDWARD RUDOLPH**

known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

_____
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ELIZABETH A. DiCOSTANZO, Notary Public
Ridley Twp. Delaware County
My Commission Expires February 23, 2008

**Certificate of Residence**
I, **Sharon  Johnson**                                 , do hereby certify that
the correct address of the within-named Mortgagee is **3000 Leadenhall Road Mount Laurel,
NJ 08054**
Witness my hand this **25th**                 day of **May, 2006**

_____
**Sharon   Johnson**                                      Agent of Mortgagee

VMP-6(PA) (0502)                  Page 16 of 16          Initials: ____          Form 3039  1/01

Original

## Schedule "A"
## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon being erected, Situate in the Borough of Norwood, County of Delaware, State of Pennsylvania and described according to a plan known as "Norwood Park", said plan made by Damon and Foster, Civil Engineers, dated January 14, 1942 and last revised March 10, 1953 as follows, to wit:

BEGINNING at a point on the Northeasterly side of North Martin Lane (50 feet wide); said point being measured by the three following courses and distances from a point of curve on the Southeasterly side of Tasker Avenue (50 feet wide) (1) leaving Tasker Avenue on the arc of a circle curving to the left having a radius of 15 feet the arc distance of 23.58 feet to a point of tangent on the Northeasterly side of North Martin Lane (2) South 54 degrees 44 minutes 20 seconds East measured along the said side of North Martin Lane 686.59 feet to a point of curve in the same; and (3) Southeastwardly still along the said side of North Martin Lane on the arc of a circle curving to the right having a radius of 384.36 feet the arc distance of 06.41 feet to the point of beginning; thence extending from said point of beginning North 35 degrees 15 minutes 40 seconds East 110.05 feet to a point; thence extending South 54 degrees 44 minutes 20 seconds Eat 61.78 feet for a point; thence extending South 43 degrees 06 minutes 50 seconds West 114.68 feet to point on the Northeasterly side of North Martin Lane, aforesaid; thence extending Northwestwardly along the said side of North Martin Lane on the arc of a circle curving to the left having a radius of 384.36 feet the stance of 46.27 feet to the first mentioned point and place of beginning.

BEING Lot #15 as shown on the above mentioned plan.

BEING, inter alia, the same premises which Norwood Park Corporation, by Deed dated March 14, 1961, recorded in Delaware County on March 28, 1961, in Deed Book 2053, Page 121, granted and conveyed unto The Third and Scots Presbyterian Church in the City of Philadelphia in said Deed the name and title of the grantee therein being inadvertently designated as "Third and Scots Presbyterian Church of Philadelphia".

UNDER AND SUBJECT to terms and conditions and courses dated the Ninth day of December, A.D., 1944 of Common Pleas Court of Delaware County, March Term, 1941, No. 545.

**Prepared by: Stewart Lender Services**

**Recording Requested By/After Recording Return To:**

Maude LeBlanc

P O Box 36369

Houston, TX 77236-9903

Loan Number: ███████

Other Loan#: ███████

Project:

Job Number: ███████

Pool:

SLS#:

RD BK04385-2102          AS-ASSIGNMENTS
2008046030    06/19/2008 03:03:03 PM:2
RCD FEE: $51.00

---

# ASSIGNMENT OF MORTGAGE

**STATE OF Pennsylvania**          KNOW ALL MEN BY THESE PRESENTS:
**COUNTY OF Delaware**

That PHH Mortgage Corporation (fka Cendant Mortgage Corp) (ASSIGNOR), acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note executed by EDWARD RUDOLPH (Borrower(s)) secured by a MORTGAGE of even date therewith from Borrower (s) for the benefit of the holder of the said note, which was recorded on the lot(s), or parcel(s) of land described therein situated in the County of Delaware, State of Pennsylvania:

Recording Ref: Recorded on 06/01/2006, Instrument/Document No. 2006050367, Book 3814, Page No. 0824

Township: Norwood

LastAssignee: N/A

Original Beneficiary: PHH Mortgage Corporation (fka Cendant Mortgage Corp)

Loan Amount: ███████

Property Address: 45 Martin Ln, NORWOOD, PA 19074

For and in consideration of the sum of Ten and No/100 dollars ($10.00), and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto Mortgage Electronic Registration Systems, Inc ("MERS") ('ASSIGNEE') all beneficial interest in and to title to said MORTGAGE, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land:

PIN#: ███████

TO HAVE AND TO HOLD unto said ('ASSIGNEE') said above described MORTGAGE and note, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

Executed this the 1st day of May, 2008.          PHH Mortgage Corporation (fka Cendant Mortgage Corp)

By: _____

THE STATE OF Texas

COUNTY OF Harris

On this the 1st day of May, 2008,  before me, Gayle Craine, a Notary Public, appeared James Kucherka to me personally known, who being by me duly sworn, did say that (s)he is the Vice President of PHH Mortgage Corporation (fka Cendant Mortgage Corp), and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said James Kucherka acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.



_____

Gayle Craine

GAYLE CRAINE
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 08-31-2010

Assignee's Address:

P.O. Box 2026
Flint, MI 48501-2026

Assignor's Address:

3000 Leadenhall Road, Suite 300, Mail Stop LGL,
Attention: General Counsel
Mt. Laurel, NJ 08054

MIN Number: ▮▮▮▮▮▮▮▮▮▮▮

MERS Telephone: 1-888-679-6377

## DO NOT DETACH



10160958-0019X

**Robert A. Auclair, Esq.**
Delaware County Recorder of Deeds
Government Center, Room 107
201 W. Front Street
Media, PA 19063
610-891-4152

**Instrument Number: 2022063087**
**Volume/Page: RECORD BK 6878 PG 5255**
**Recorded Date: 12/16/2022 6:22:54 AM**

| | |
|---|---|
| **Transaction Number:**  952427 | **Return To (Simplifile):** |
| **Collected By:** delsordor | Logs Legal Group LLP - Charlotte, NC |
| **Document Type:** ASSIGNMENTS | 10130 PERIMETER PKWY |
| **Document Page Count :** : 2 | CHARLOTTE, NC 28216-2447 |

**Parcel ID:** 31-00-00827-00

| Fees: | | |
|---|---|---|
| RECORDING FEES: | $37.50 | **Instrument Number:** 2022063087 |
| COUNTY IMPROVEMENT FUND: | $5.00 | **Volume/Page:** RECORD BK 6878 PG 5255 |
| JCS/ATJ FEE: | $40.25 | **Recorded Date:** 12/16/2022 6:22:54 AM |
| WRIT TAX: | $0.50 | |
| | | |
| **Total Fees:** | $83.25 | |
| | | |
| **Amount Paid:** | $83.25 | |
| | | |
| **Amount Due:** | $0.00 | |

**OFFICIAL RECORDING COVER PAGE**

## DO NOT DETACH

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has
been corrected.  The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL
INFORMATION.

When Recorded Return To:
DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

**Assessor's/Tax ID No.: 31-00-00827-00**

<u>**CORPORATE ASSIGNMENT OF MORTGAGE**</u>

**Delaware, Pennsylvania**
**SELLER'S SERVICING #** ▮▮▮▮▮ "RUDOLPH"

**MIN #:**▮▮▮▮▮▮▮ **SIS #: 1-888-679-6377**

Date of Assignment: December 6th, 2022
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, ITS SUCCESSORS AND ASSIGNS
Assignee: NATIONSTAR MORTGAGE LLC

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: EDWARD    RUDOLPH , A MARRIED MAN  To: PHH MORTGAGE CORPORATION (FKA CENDANT MORTGAGE CORP)
Date of Mortgage:  05/25/2006 Recorded:  06/01/2006  in Book/Reel/Liber: 03814 Page/Folio: 0824 as Instrument/Document: 2006050367  In the County of Delaware, State of Pennsylvania.
Property Address: 45 MARTIN LANE, NORWOOD, PA  19074 in the Borough of NORWOOD

I do certify that the precise address of NATIONSTAR MORTGAGE LLC is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Attested By: _____
Tsedale Alemu

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $110,400.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

    TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, ITS
SUCCESSORS AND ASSIGNS
On December 6th, 2022

By: _____
TSEDALE ALEMU, Vice-President

STATE OF Texas
COUNTY OF Denton

On December 6th, 2022, before me, SYLVIA RAMIREZ, a Notary Public in and for Denton in the State of
Texas, personally appeared TSEDALE ALEMU, Vice-President of MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS MORTGAGEE, ITS SUCCESSORS AND ASSIGNS, personally
known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/07/2023 #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660

(This area for notarial seal)